UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TAMMY BUTLER SLOCUM

CIVIL ACTION

VERSUS

NUMBER 13-410-JWD-SCR

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY

**<u>NOTICE</u>**

Please take notice that the attached Magistrate Judge's Report
has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days
after being served with the attached report to file written
objections to the proposed findings of fact, conclusions of law,
and recommendations set forth therein. Failure to file written
objections to the proposed findings, conclusions and
recommendations within 14 days after being served will bar you,
except upon grounds of plain error, from attacking on appeal the
unobjected-to proposed factual findings and legal conclusions
accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE
WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, March 19, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TAMMY BUTLER SLOCUM

VERSUS

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY

CIVIL ACTION

NUMBER 13-410-JWD-SCR

### MAGISTRATE JUDGE'S REPORT

Plaintiff Tammy Buhler Slocum brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, the Acting Commissioner of Social Security ("Commissioner") that denied her claim for disability insurance benefits.[1]

Based on the standard of judicial review under § 405(g), a careful review of the entire administrative record as a whole, and the analysis that follows, the Commissioner's decision should be affirmed.

### Standard of Review

Under § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as

---

[1] The Complaint stated the plaintiff's name as Tammy Butler Slocum. However, this appears to be an error. Plaintiff's application for benefits and many other documents in the administrative record show the plaintiff's name is Tammy Buhler Slocum. AR p. 154.

a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

If the Commissioner fails to apply the correct legal

standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). Thus, on judicial review the Commissioner's decision is granted great deference, and the decision will not be disturbed unless the court cannot find substantial evidence in the record to support it, or the court finds an error of law was made. *Leggett v. Chater,* 67 f.3d 558, 564 (5th Cir. 1995).

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. § 404.1505. The regulations require the ALJ to apply a five step sequential evaluation to each claim for benefits. 20 C.F.R. § 404.1520. In the five step sequence the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271.

At step three, listed impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listed impairment he must demonstrate that it meets all of the medical criteria specified in the listing. An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 529-32, 110 S.Ct. 885, 891-92 (1990); 20 C.F.R. § 404.1525. If the ALJ determines that the claimant's impairments meet or medically equal the criteria of one of the listed impairments, the claimant is presumed to be disabled and qualifies for benefits without further inquiry. *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000).

The burden of proving disability rests on the claimant through the first four steps. At the fourth step the Commissioner analyzes whether the claimant can do any of his past relevant work. If the claimant shows at step four that he or she is no longer capable of performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy. *Myers*, supra. If the Commissioner meets this burden the claimant must then show that he or she cannot in fact perform that work. *Boyd*, 239 F.3d at 705.

## Background and Claims of Error

Plaintiff was 50 years old at the time of the administrative law judge's ("ALJ") decision.[2]  Plaintiff graduated from high school, and her past relevant work consisted of employment as a scale operator/weigher at a paper mill for 21 years.  After this employment ended the plaintiff worked as a cashier/clerk at a pet store.  AR pp. 43-48, 178-79.  In her application for disability benefits filed on March 9, 2011, the plaintiff alleged that she became disabled and no longer able to work as of March 8, 2008 because of mental problems, emphysema, neck pain and back pain.  AR pp. 149, 169.[3]

After her application was denied at the initial stages the plaintiff requested an ALJ hearing.  The hearing was held and after it the ALJ issued an unfavorable decision.  AR pp. 19-80.  The ALJ found at the second step that the plaintiff had the following severe impairments – chronic obstructive pulmonary disease, major depressive disorder, and degenerative disc disease of the cervical and lumbar spine with chronic pain.  AR p. 21.  At the third step the ALJ concluded that the plaintiff's combination of severe impairments did not meet or medically equal the severity of any listed impairment.  In evaluating whether the plaintiff had an

---

[2] The regulations define persons age 50-54 as persons closely approaching advanced age. 20 C.F.R. § 404.1563(d).

[3] Plaintiff had an unsuccessful work attempt after her alleged date of onset of disability.  AR pp. 21, 174.

impairment of listing level severity, the ALJ specifically analyzed whether the plaintiff's emphysema impairment satisfied Listing 3.02 (Chronic Pulmonary Insufficiency), and whether her major depressive disorder satisfied Listing 12.04 (Affective Disorders).

The ALJ then evaluated the plaintiff's residual functional capacity ("RFC") to determine whether, despite her combination of severe impairments, the plaintiff was able to do any of her past relevant work or other work in the national economy.[4] The ALJ found the plaintiff had the RFC to perform light work as defined in the regulations,[5] except that the plaintiff was:

> [L]imited to unskilled, routine work with few changes in the work process, no fast paced production quotas such as assembly line and piecework. She should have no interaction with the general public and only occasional interaction with coworkers and supervisors. She should complete work alone and not in a group or collaborative effort. She can occasionally climb, kneel, crouch, or crawl. She must avoid working in extreme heat, humidity, and other pulmonary irritants.

AR p. 23.

---

[4] Residual functional capacity is a measure of a claimant's capacity to do physical and mental work activities on a regular and sustained basis. It is the foundation of the findings at steps four and five. 20 C.F.R. § 404.1545.

[5] The regulations define a light exertional level of work as follows:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

Given this RFC and based on the testimony of the vocational expert, the ALJ found that the plaintiff would not be able to perform any of her past relevant work. However, based on the plaintiff's age, education, work experience and RFC, and relying on the expert's testimony, the ALJ found that the plaintiff would be able to make a successful adjustment to work in other occupations that exist in significant numbers in the national economy – price marker and deli cutter-slicer. Therefore, the ALJ concluded at the fifth step that the plaintiff is not disabled.[6] AR pp. 32-34, 74-82.

In her appeal memorandum the plaintiff argued that the following errors require reversal and remand under sentence four of § 405(g):

(1) the ALJ improperly rejected the restrictions assessed by her treating psychiatrist Dr. Rama Kongara;

(2) because the ALJ also improperly excluded from the plaintiff's RFC some of the limitations/restrictions found in the reports which she credited,[7] no evidentiary choices exist to support the ALJ's mental RFC finding;

(3) the ALJ found at step three that the plaintiff was

---

[6] Plaintiff exhausted her administrative remedies before filing this action for judicial review.

[7] These are the reports of James A. Van Hook, III who performed a consultative mental status examination on June 14, 2011, and the assessment by Kelly Ray, the state agency psychological consultant. AR pp. 451-53.

moderately limited with regard to concentration, persistence or pace, but failed to include this limitation in her determination of the plaintiff's mental RFC;

(4) the ALJ improperly rejected the plaintiff's complaints of numbness and restrictions in the use of her hands, without the assessment of credibility required by the regulations; and,

(5) the vocational testimony on which the ALJ relied does not carry the Commissioner's burden of establishing the existence of other work, because the vocational testimony does not indicate the actual number of other jobs the plaintiff could successfully perform.

## Analysis

**The ALJ did not improperly assess the plaintiff's credibility with regard to the complaints of numbness and restrictions in the use of her hands.**

Plaintiff argued the ALJ improperly found her allegations of numbness and restriction in the use of her hands not credible. According to the plaintiff, the record contains medical evidence of cervical radiculopathy and carpal tunnel syndrome, which could reasonably be expected to cause these symptoms, and there is no basis in the record to find these complaints not credible.

The legal principles governing review of the ALJ's credibility findings are well established. While the ALJ must consider a claimant's subjective complaints, she may find that those

complaints are not credible or are exaggerated in light of the objective medical and other evidence of record. The ALJ is not required to give subjective evidence precedence over objective evidence. *Anthony v. Sullivan,* 954 F.2d 289, 295-96 (5th Cir. 1992); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). The ALJ's evaluation of the claimant's credibility is entitled to deference and must be upheld if it is supported by substantial record evidence. *Id*.

The record as a whole and the ALJ's written decision demonstrates that the ALJ complied with these principles. The ALJ adequately explained her reasons for finding the plaintiff not fully credible, and substantial evidence corroborates this finding. Review of the ALJ's decision also shows that she cited the correct standards governing the credibility determination, and then properly applied them in reaching her conclusions. AR pp. 23-30.

As explained by the ALJ, although the medical records contained notations of cervical radiculopathy and carpel tunnel syndrome based on the plaintiff's complaints of numbness and problems using her hands, such evidence as the plaintiff's activities of daily living, her use of over-the-counter pain medication, and objective findings contained in the records of Dr. Scott Nyboer and Dr. Douglas Davidson, provide a basis to conclude that these complaints

should not be credited.[8]  In other words, this objective evidence was inconsistent with the limitations the plaintiff claimed she experienced using her hands.  The information in the record discussed and relied on by the ALJ, is relevant and more than sufficient for a reasonable mind to accept as adequate support for the conclusion that the plaintiff was not credible with regard to her complaints of numbness and restrictions in the use of her hands.[9]  Plaintiff's assertion of error in the ALJ's credibility determination is unsupported and does not provide a basis to reverse the ALJ's decision.

---

[8] See, e.g., AR pp. 52, 55-63, 401, 439, 544-47(evidence showing the plaintiff is able to do light housework, cook, shop for groceries and leisure, take care of pets, drive and travel alone, travel several hours to visit family members); AR pp. 50, 205 (medications); AR pp. 400-03, 425-28, 534 (records/reports by Drs. Nyboer and Davidson showing normal findings for coordination, ambulation, strength, sensation in upper and lower extremities, range of motion of all joints, negative straight leg raising, good range of motion in hands and fingers).

[9] If the ALJ's credibility determination is supported by substantial evidence, the fact that there is also evidence which supports the claimant's credibility is not a basis for reversing the ALJ's decision. Judicial review under § 405(g) does not require that all of the evidence support the ALJ's findings. Even if substantial evidence supports the claimant's position this is not a ground for reversal. As long as the finding or decision is supported by substantial evidence in the record as a whole it must be affirmed.  § 405(g); see, Carroll v. Dept. Health, Ed. and Welfare, 470 F.2d 252, 254, n. 4 (5th Cir. 1972); Haley v. Massanari, 258 F.3d 742, 747-48 (8th Cir. 2001); Palomino v. Barnhart, 515 F.Supp.2d 705, 710 (W.D.Tex. 2007), citing, Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001)(when record as a whole indicates a mixed collection of evidence regarding plaintiff's impairments and their impact, Commissioner's decision upheld as long as there is substantial evidence to support it).

**The ALJ did not violate the standards for weighing medical opinions, nor improperly reject the restrictions assessed by plaintiff's treating psychiatrist, Dr. Kongara.**

The legal principles governing the review of a claim that the ALJ erred in weighing the medical reports and opinions are also well-established. Although the opinion and diagnosis of a treating physician should generally be given considerable weight in determining disability, it is well established that a treating physician's opinions are not conclusive and may be assigned little or no weight when good cause is shown. The ALJ may discount the weight of a treating doctor's medical opinion when it is conclusory, unsupported by medically acceptable clinical, laboratory or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton*, 209 F.3d at 455-56. An ALJ is free to reject the medical opinion of any physician when the evidence supports a contrary conclusion. *Bradley*, 809 F.2d at 1057.

The regulations also state that when the ALJ finds the medical opinion is not entitled to controlling weight, certain factors should be considered in deciding how much weight to give the opinion. These factors include the length of treatment, the consistency of the opinion with the record as a whole, and the treating physician's specialization. 20 C.F.R. §§ 404.1527(c) and (d); SSR 96-2p;[10] *Newton*, 209 F.3d at 456. Nevertheless, the ALJ

_____

[10] TITLES II AND XVI: GIVING CONTROLLING WEIGHT TO TREATING SOURCE MEDICAL OPINIONS, 1996 WL 374188.

need not consider each of the factors where there is competing first-hand medical evidence and the ALJ finds that one doctor's opinion is more well-founded than another. *Id.,* at 458; *Walker v. Barnhart*, 158 Fed.Appx. 534 (5th Cir. 2005).

A medical source's opinions on some issues are not medical opinions, but are instead "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e. that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d). Thus, a treating source's statement or opinion that the claimant is "disabled" or "unable to work," is not a medical opinion, but a legal conclusion on an issue reserved to the Commissioner. The factors set out in the regulations apply only to medical opinions, not opinions reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1)-(3); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

Plaintiff argued that the ALJ rejected the opinions of Dr. Kongara stated in a letter dated March 13, 2012, without good cause and without an adequate explanation. Based on the legal principles stated above, review of the ALJ's decision demonstrates that this claim of error is also unsupported. To the extent that Dr. Kongara rendered any opinion that the plaintiff was unable to work, this type of statement is not a medical opinion to which the regulatory factors are applied, and under the regulations such a statement is

not given any special significance. 20 C.F.R. § 404.1527(d)(1)-(3). Since there was first-hand medical evidence from other sources, the ALJ was also not required to consider and analyze each of the factors in the regulations.

Nevertheless, the ALJ sufficiently explained why she did not credit the opinions rendered by Dr. Kongara in the March 2012 letter addressed to the plaintiff's representative. As discussed by the ALJ, the treatment records did not contain information that backed up Dr. Kongara's statements. The records also reflected dates of treatment/therapy showing that the plaintiff's treatment was sporadic with significant gaps between dates of treatment.[11] AR pp. 27-28. Nor did the plaintiff's daily activities,[12] information from the consultative mental examination, and the assessment of the state agency psychological consultant support the extent of limitations in mental functioning indicated by Dr.

---

[11] Dr. Kongara's treatment records covered the time period April 4, 2008 to February 27, 2012. AR pp. 471-77, 539-550. As noted by the ALJ: (1) the records showed that after 2008, the plaintiff had only 4 visits in 2009 and 2 visits in 2010, and after the visit in August 2010 the plaintiff did not seek treatment again until July 2011, when at that time issues arose with her daughter; and, (2) the treatment records did not document the presence of the limitations the doctor stated in his March 2012 letter, such as loss of energy, psychomotor retardation or labile mood, or significant difficulties with attention/concentration and socialization on an ongoing basis. AR pp. 27-28.

[12] AR pp. 52, 55-63, 401, 439, 544-47.

Kongara.[13]    AR pp. 86, 91-92.   The evidence contained in the

record, that was cited and relied on by the ALJ, provides

substantial evidentiary support for the ALJ's decision  to reject

Dr. Kongara's opinions with regard to the plaintiff's ability to

work.

**The ALJ did not improperly exclude limitations/restrictions found in the reports which she credited, and the ALJ's mental RFC finding was supported by substantial evidence.**

Plaintiff essentially argued that the ALJ erred because she

credited certain opinions and reports, but failed to adopt all the

findings and restrictions stated by that medical source in her

mental RFC finding.[14]  Plaintiff also argued that it was error for

the ALJ to omit from the mental RFC finding, her step three finding

---

[13] For example, the report of the mental status examination done by Van Hook on June 14, 2011 showed that despite the plaintiff's depression, the plaintiff had adequate motivation, persistence, pace, memory, memorization, understanding; an adequate level of social judgment and adaptive skills; thinking that was logical and coherent, with no delusions or hallucinations; an adequate ability to understand, remember and carry out instructions; and an adequate  ability to maintain attention and concentration for performing simple, repetitive tasks.  AR pp. 452-53.

[14] The mental limitations the ALJ found resulted from the plaintiff's mental impairments.  These impairments, which the ALJ included in the RFC finding, were:

> [T]he claimant is limited to unskilled, routine work with few changes in the work process, no fast paced production quotas such as assembly line and piecework.  She should have no intervention with the general public and only occasional interaction with coworkers and supervisors. She should complete work alone and not in a group or collaborative effort.

AR p. 23.

that the plaintiff's ability to concentrate is moderately limited.
Because of these errors, plaintiff argued, no evidentiary choices
exist to support the mental RFC finding adopted by the ALJ.

Again, the plaintiff's arguments are unsupported. First, as
the plaintiff acknowledged and the record and regulations
establish,[15] findings at step three are not intended or designed to
provide specific limitations of functioning in a claimant's mental
RFC at steps four and five. Therefore, there is no basis to find
legal error or a lack of substantial evidence because the ALJ chose
not to include this step three finding in the RFC determination.

Second, the plaintiff cited no authority for the argument that
an ALJ must adopt all the specific findings or limitations
contained in the report of a source the ALJ determines is entitled
to some weight. The ALJ is the trier of fact, and in that role
reviews all the evidence, interprets and weighs it, decides
credibility and resolves any conflicts in the evidence. At the end
of this fact finding process, the ALJ is entitled to adopt whatever
portions of the reports or opinions she determines are supported by
the objective and other evidence of record. These conclusions must
be affirmed if they are supported by substantial evidence.
Plaintiff's argument that the ALJ's mental RFC finding does not

---

[15] Record document number 13, Plaintiff's Reply to the
Defendant's Opposition Memorandum, p. 4; record document number 12,
Defendant's Opposition Memorandum, p. 11 (regulations and policy
rulings cited by Commissioner).

encompass the limitations found by Van Hook and Ray, is just that
– an argument based on the plaintiff's interpretation of the
evidence; it does not demonstrate that substantial evidence is
lacking.[16]  The evidence credited by the ALJ from the reports of Van
Hook and Ray,[17] constitute substantial evidence to support the ALJ's
findings with regard to the nonexertional limitations caused by the
plaintiff's mental impairments that the ALJ included in her RFC
finding.[18]

**The vocational expert testimony was sufficient to carry the Commissioner's burden at the fifth step to establish the plaintiff could do other work.**

Plaintiff argued that the vocational testimony relied upon by
the ALJ does not carry the Commissioner's burden of establishing
there are a significant number of jobs in the national economy she
can do given her age, education, work experience and RFC.[19]

---

[16] Record document number 10, Plaintiff's Memorandum in Support
of Appeal, pp. 11-13.

[17] AR pp. 86-88, 90-94, 451-53.

[18] The record evidence in this case is not the same or similar
to the circumstances that supported a finding of error in the cases
relied on by the plaintiff - *Williams v. Astrue,* 355 Fed.Appx. 828,
832 (5th Cir. 2009), and *Ripley v. Chater*, 67 F.3d 552, 557-58 (5th
Cir. 1995).

[19] The ALJ's RFC finding included nonexertional limitations.
It is well established that if a claimant has nonexertional
limitations the ALJ uses the Medical-Vocational Guidelines only as
a framework, and is required to obtain vocational expert testimony
to support her findings at step five of the disability analysis.
*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Fields v.*
(continued...)

According to the plaintiff, this error is demonstrated by the fact that the expert identified the Standard Occupational Classification[20] ("SOC") codes for the jobs of deli cutter-slicer and price marker, and post-hearing evidence was submitted showing that the numbers of jobs provided by the expert actually included all of the jobs which fall under the SOC codes,[21] not just the two particular jobs identified by the expert. Therefore, plaintiff argued, there is no evidence to show that these jobs exist in significant numbers in the national economy.

Neither review of the expert's testimony nor the plaintiff's post-hearing submissions support the plaintiff's argument. The record demonstrates the ALJ elicited the following testimony from the vocational expert: (1) no federal or state agency precisely counts every job available in the national economy, and information regarding numbers of jobs is only an estimate; (2) with regard to

---

[19](...continued)
*Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986); *Vaughn v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

[20] The Standard Occupational Classification system is used by Federal statistical agencies to classify workers into occupational categories for the purpose of collecting, calculating, or disseminating data. All workers are classified into one of more than 800 detailed occupations according to their occupational definition. To facilitate classification, detailed occupations are combined to form broad occupations, then minor groups and major groups of occupations. Detailed occupations with similar job duties, and in some cases similar skills, education, and/or training, are grouped together. United States Department of Labor, Bureau of Labor Statistics, http://www.bls.gov/soc.

[21] Plaintiff cited AR pp. 213-15, 556-59.

giving any numbers of jobs available in the national economy, the source the expert used is considered reliable by persons who do vocational studies; and, (3) in response to the ALJ's hypothetical question, the expert stated the plaintiff would be able to perform the jobs of price marker and deli cutter-slicer. AR pp. 71-72, 74-75. Immediately after citing each job, the expert gave the numbers of jobs nationally and in Louisiana. AR p. 75. Therefore, a plain reading of the expert evidence on which the ALJ based her finding at step five, shows the expert's statement of the job numbers was for the specific jobs he named, and the numbers given were based on reliable evidence. The expert did not state, and there is no basis to infer from his testimony, that the numbers he gave were not for the specific job but instead were for an entire category of jobs included within an SOC code. AR pp. 72-75.

At the hearing the plaintiff's representative was given a full opportunity to question the vocational expert. The only question the representative asked the expert was to identify the SOC or codes for the jobs identified. He did not ask the expert to clarify whether the numbers provided were for all the jobs included under each SOC code, or for the specific jobs of price marker and deli cutter-slicer. AR pp. 78-79. Plaintiff' representative had the opportunity, but did not make any attempt to elicit any information from the expert to support the argument that the jobs named by the expert did not exist in significant numbers in the

national economy.  Plaintiff submitted arguments and information after the hearing, which set forth the SOC codes and job categories, and listed all of the DOT codes and job names included in that category.  This information showed the jobs of price marker and deli cutter-slicer were among the numerous jobs included under each SOC code.  However, nothing in this post-hearing information shows that the expert's estimated job numbers are for an entire SOC code rather than the specific jobs the expert stated the plaintiff could perform.

In summary, the record supports the Commissioner's position that the vocational evidence relied on by the ALJ constitutes substantial evidence.[22]  Plaintiff's argument that the vocational evidence with regard to job numbers is insufficient to support the Commissioner's finding at the fifth step is unsupported.  The expert's testimony provides substantial evidence to support the ALJ's finding that the plaintiff is able to do other work that exists in significant numbers in the national economy.[23]

---

[22] Record document number 12, pp. 11-12.

[23] Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country; when there is a significant number of jobs, in one or more occupations, having requirements which the claimant is able to meet with his physical or mental abilities and qualifications.  It does not matter whether work exists in the immediate area in which the claimant lives, a specific job vacancy exists for the claimant, or the claimant would be hired if he applied for work.  However, isolated jobs that exist only in very limited numbers in relatively few locations outside of
(continued...)

## Conclusion

The analysis above demonstrates that the plaintiff's claims of error in the Commissioner's final decision are without merit. The record considered as a whole supports the conclusion that the proper legal standards were applied and that substantial evidence supports the determination that the plaintiff is not disabled.

## <u>RECOMMENDATION</u>

It is the recommendation of the magistrate judge that, under sentence four of 42 U.S.C. § 405(g), the final decision of Acting Commissioner of Social Security Carolyn W. Colvin denying the application for disability income benefits filed by plaintiff Tammy Buhler Slocum be affirmed, and this action be dismissed.

Baton Rouge, Louisiana, March 19, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[23](...continued)
the region where the claimant lives are not considered work which exists in the national economy. 20 C.F.R. § 404.1566(a).